UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Patrick R. Gleason and
Susan A. Gleason,

            Plaintiffs,             **MEMORANDUM OPINION
                                                AND ORDER**
     v.                                        Civil No. 13-704 ADM/FLN

Deutsche Bank National
Trust Company, as Trustee
for Morgan Stanley ABS
Capital I Inc., Trust 2006-HE3,

            Defendant.

___

Jonathan L.R. Drewes, Esq., and Michael J. Wang, Esq., Drewes Law, PLLC, Minneapolis, MN, on behalf of Plaintiffs.

Charles F. Webber, Esq., D. Charles Macdonald, Esq., and Elizabeth A. Walker, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On May 20, 2013, the undersigned United States District Judge heard oral argument on Defendant Deutsche Bank National Trust Company's ("the Trust") Motion to Dismiss [Docket No. 4] and Plaintiffs Patrick R. Gleason and Susan A. Gleason's ("the Gleasons") Motion for Partial Summary Judgment [Docket No. 13]. For the reasons stated below, the Trust's motion to dismiss is denied in part and granted in part. The Gleasons' motion for partial summary judgment is granted.

## II. BACKGROUND

1

The facts of this case are undisputed. The Gleasons own a home in Champlin, Minnesota. Def.'s App. [Docket No. 7] 2-3. In an agreement dated January 13, 2006, the Gleasons granted Mortgage Electronic Registration Systems, Inc. ("MERS") a mortgagee's interest in their Champlin property. Id. at 3, 12. That agreement was recorded with the Hennepin County Registrar of Titles on February 23, 2006. Id. at 1. MERS assigned its interest in the Champlin property to the Trust in an instrument dated July 14, 2009, and recorded with the Hennepin County Registrar of Titles on August 5, 2009. Id. at 16-18.

The Gleasons defaulted on their mortgage and the Trust initiated proceedings to foreclose on the Champlin property. Id. at 24. The Trust began foreclosure by advertisement proceedings. A sheriff's sale was originally scheduled for June 8, 2012. Id. The Trust postponed the sheriff's sale to July 9, 2012, and then to August 10, 2012. Id. at 25-26. The Gleasons then exercised their option under Minn. Stat. § 580.07, subd. 2(a)(1), to postpone the sheriff's sale for five months. Id. at 23. Five months from August 10, 2012 was January 10, 2013. The Champlin property was sold one day later at a sheriff's sale on January 11, 2013. Id. at 29-30.

### III. DISCUSSION

**A. Standards of Review**

Rule 12 of the Federal Rules of Civil Procedure states that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).

Rule 12, working in combination with Rule 8, requires the plaintiff's factual allegations to "raise a right to relief above the speculative level" and push claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

**B.  State Law**

On questions of state law, a federal court is bound by the rulings of that state's highest court. Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010).  But if a state court has not ruled on a particular question, a federal court must determine how the state's highest court would rule, considering similar state-court decisions, appropriate dicta, and other reliable information.  Id.; see Myers v. Lutsen Mountains Corp., 587 F.3d 891, 896 (8th Cir. 2009).

In applying the state's foreclosure by advertisement statute, Minnesota Statute, Chapter 580, the Minnesota Supreme Court looks to the plain language of the statute. Ruiz v. 1st Fid. Loan Servicing, LLC, 829 N.W.2d 53, 57 (Minn. 2013) (construing Minn. Stat. § 580.02(3)).  When the plain language is unambiguous, the Minnesota Supreme Court has given effect to the "letter of the law." Id.  In addition, the courts "construe a statute 'as a whole so as to harmonize

and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.'" Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 496 (Minn. 2009) (quoting In re UnitedHealth Group, Inc., 754 N.W.2d 544, 563 (Minn. 2008)).

Minnesota state courts have required strict compliance with the Minnesota legislature's foreclosure by advertisement requirements. In 2009, the Minnesota Supreme Court discussed the purpose of Minn. Stat. Ch. 580:

> Foreclosure by advertisement was developed as a non-judicial form of foreclosure designed to avoid the delay and expense of judicial proceedings. Because foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed. We require a foreclosing party to show exact compliance with the terms of the statutes. If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void.

Jackson, 770 N.W.2d at 494 (internal quotations and citations omitted). The Minnesota Supreme Court recently reaffirmed this approach to foreclosure by advertisement requirements when it held that Minn. Stat. § 580.02 requires strict compliance. Ruiz, 829 N.W.2d at 58. These decisions reflect a 150-year history in Minnesota of holding foreclosing parties to strict compliance for foreclosures by advertisement. As the court explained as far back as 1860, the law must be followed scrupulously when the legislature is allowing a foreclosing party to take "the remedy in his own hands, by an ex parte proceeding . . . ." Spencer v. Annan, 4 Minn. 542, 544 (1860) (finding a sale void when the notice overstated the amount due on the mortgage, discouraging competition at the foreclosure sale); see also Moore v. Carlson, 112 Minn. 433, 434 (1910) ("One who avails himself of [foreclosure by advertisement statutes] must show an exact

and literal compliance with its terms; otherwise he is bound to profess without authority of law.").

**C. Postponement of Sale Under Minn. Stat. § 580.07**

Section 580.07 regulates the postponement of sale in cases where a mortgage is being foreclosed by advertisement. Minn. Stat. § 580.07 (2012). The statute is divided into two main subdivisons. Id. Subdivision 1 applies to the mortgagee. Id. § 580.07, subd. 1. It states in part that "[t]he sale may be postponed, from time to time, by the party conducting the foreclosure." Id. If the mortgagee postpones the sale, the mortgagee must notify the occupant and publish notice in a newspaper. Id. Subdivision 2 applies to the mortgagor. Id. § 580.07, subd. 2. If the property being foreclosed is at least partially classified as a homestead and contains one to four dwelling units, subdivision 2 allows the mortgagor to postpone the sale:

> to the first date that is not a Saturday, Sunday, or legal holiday and is: (1) five months after the originally scheduled date of sale if the original redemption period was six months . . . or (2) 11 months after the originally scheduled date of sale if the original redemption period was 12 months.

Id. If the mortgagor postpones the sale, the statute requires the mortgagor to execute and record an affidavit to that effect. Id.

The issue in this case arises from an additional day being added to end of the mortgagor's postponement. The Champlin property was scheduled to be sold on August 10, 2012, when the Gleasons exercised their option to postpone it. Def.'s App. at 23-26. Five months from August 10, 2012, was January 10, 2013, a Thursday. The Gleasons argue that strict compliance with Section 580.07 required the sale to take place that day. Pl.'s Mem. Opp. Dismissal [Docket No. 16] 7-8. They emphasize that the statute requires the postponement to end the <u>first</u> day that is

five months after the original sale date and not a weekend or holiday. Id. Further, they argue that delaying the sale beyond the date indicated by the statute's five month provision deprives potential buyers of notice of the sale. Id. at 9; Pl.'s Mem. Supp. Summ. J. [Docket No. 15] 10-11. Since there is no publication requirement connected with the mortgagor's postponement, potential buyers must rely on the previously published date and the exact five month addition specified in the statute to determine when the sale will occur. Pl.'s Mem. Supp. Summ. J. at 10-11.

The Trust does not deny that the statute allows the Gleasons to postpone the sale until January 10 and no later. The Trust argues that even under strict compliance, it was not required to hold the sale on January 10 because the statute's delay provision pertains only to the end date of the mortgagor's postponement, not the date when the mortgagee holds the sale. Def.'s Mem. Supp. Dismissal [Docket No. 4] 5-6. The Trust contends that the five month provision in subdivision 2 of the statute addresses the rights and responsibilities of the mortgagor, not the mortgagee. Id. Accordingly, the Trust was entitled to hold the sale any day beginning on January 10 and following. Id. If potential buyers wanted to know the date of the sale, they could contact the foreclosing law firm or the sheriff handling the sale. Def.'s Reply Supp. Dismissal [Docket No. 19] 3.

The Court concludes that strict compliance with Section 580.07 requires the Trust to hold the sale on the date dictated by subdivision 2's time requirement. The two subdivisions of the statute outline the rules under which the parties can unilaterally postpone the sale. Subdivision 1 allows the mortgagee to postpone the sale "from time to time" as it sees fit. Subdivision 2 is a recent reform that allows the mortgagor to effectively shift the time under the redemption period

from after the sale to before the sale.  Frank S. Alexander, et al., Legislative Responses to the Foreclosure Crisis in Nonjudicial Foreclosure States, 31 Rev. Banking & Fin. L. 341, 398 (2011).  The time provisions of subdivision 2 are unambiguous.  When the Gleasons invoked subdivision 2, they postponed the sale to January 10—no sooner and no later.  On January 10, responsibility for postponement shifted back to the Trust.  It could have decided to hold the sale on the prescribed day.  Or, it could have postponed the sale yet again by following the notice procedures set forth in subdivision 1.  Because the Trust postponed the sale to January 11 and did not satisfy the notice and publication requirements of subdivision 1, the sale was invalid.

Contrary to the Trust's argument, this outcome does not impose "duties and obligations [on] the foreclosing party where the statute does not set them forth."  Def.'s Mem. Supp. Dismissal at 8.  Rather, this outcome reflects a strict application of the plain language of Section 580.07.  The statute, as a whole, governs all postponements of the mortgage foreclosure sale.  The Trust is correct that it is not subject to the requirements of subdivision 2.  But, the Gleasons' invocation of subdivision 2 did not relieve the Trust of its duties under subdivision 1.  The Gleasons postponed the sheriff's sale from August 10, 2012 to January 10, 2013.  When the Trust moved the sale from January 10 to January 11, this further postponement by the mortgagee required publication and notice under subdivision 1.

The Trust's argument that the Gleasons are not entitled to relief because they have not alleged any prejudice or harm is unpersuasive.  First, the presence or absence of harm is irrelevant in cases where strict compliance is required.  The Minnesota Supreme Court stated in Peaslee v. Ridgway that "[t]he question whether such defects are of a prejudicial character is not considered important."  84 N.W. 1024, 1025 (Minn. 1901); see Ruiz, 829 N.W.2d at 58 (citing

Aldinger v. Close, 161 Minn. 404, 406 (1925)); see also Clifford v. Tomlinson, 64 N.W. 381, 382 (Minn. 1895) ("To hold that a difference of two days in date renders the foreclosure invalid may seem somewhat technical, but we have no discretion to exercise, as the requirements of the statute are absolute.").

Second, postponing the sale without following the procedure prescribed by the statute may have caused harm. The Minnesota Supreme Court has recognized that any failure to strictly comply with foreclosure by advertisement procedures would cast doubt on the validity of the foreclosure and "would necessarily deter bidders and stifle competition at the sale." Backus v. Burke, 51 N.W. 284, 285 (Minn. 1892). In this case, postponing the sale from January 10 to January 11 not only violated strict compliance but also created notice issues for potential buyers. Subdivision 1 requires the mortgagee to publish notice in the newspaper each time it postpones the sale. Subdivision 2 has no publication requirement, but its precise five month provision allows interested parties to determine the new sale date based on the previously published date. When the Trust postponed the sale from January 10 to January 11, it did not publish a notice and interested parties had no way of knowing the new sale date unless they contacted the foreclosing law firm or the sheriff handling the sale. This lack of public notice may have undermined competition at the sale. A low sale price harms the Gleasons because, as mortgagors, they may be liable for a deficiency or entitled to a surplus. See Thorp v. Merrill, 21 Minn. 336, 338 (1875).

Finally, the Trust argues that Farm Credit Bank v. Kohnen, 494 N.W.2d 44, 46 (Minn. Ct. App. 1992), and Holmes v. Crummett, 13 N.W. 924, 924 (Minn. 1882), dictate a different approach to Chapter 580 cases. But, as this Court previously discussed in Sari v. Wells Fargo

Bank, N.A., No. 12-1780, 2012 U.S. Dist. LEXIS 145615, at *6-8 (D. Minn. Oct. 10, 2012), Holmes and Farm Credit are both distinguishable cases dealing with notice to tenants, whose interests were described as inferior to that of the owners.[1] As discussed above, the rules of statutory construction require reading the plain language of the statute as written and enacted by the Minnesota legislature. It is clear that the legislature designed Section 580.07 to require strict compliance.

**D. Slander of Title**

The Gleasons further claim that the Trust slandered title to the Champlin property when it recorded the sheriff's certificate for the January 11 sale. Not. of Removal [Docket No. 1] Ex. 1 ("Complaint") 4-6. Slander of title occurs when: (1) a false statement concerning the real property owned by the plaintiff; (2) is published to others; (3) maliciously; and (4) causes the plaintiff pecuniary loss in the form of special damages. Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000). The Trust argues that the Gleasons have not alleged any facts showing that the Trust recorded the sheriff's certificate with malice. Def.'s Mem. Supp. Dismissal at 9. In response, the Gleasons argue that their allegation is sufficient. The Gleasons allege that upon information and belief, the Trust "knew or should have known that the sheriff's sale was held on the wrong date." Pl.'s Mem. Opp. Dismissal at 12.

---

[1] The United States Court of Appeals for the Eighth Circuit recently ruled in a 2-1 split opinion that a foreclosed party cannot rely on Minn. Stat. § 580.032, subd. 3, because the statute is "most sensibly read to protect the interest of third parties who own a 'redeemable interest'"—such as junior creditors—not the interests of the owners who have been notified in another manner. Badrawi v. Wells Fargo Home Mortg., Inc., No. 12-2656, 2013 U.S. App. LEXIS 13300, at *8-9 (8th Cir. June 28, 2013). Unlike § 580.032, subd. 3, § 580.07 has a broader application, which includes the interests of the homeowners.

The Court concludes that the Gleasons' allegation is conclusory. They have not alleged sufficient facts to support a plausible inference that the Trust filed the sheriff's certificate with malice. Even if the Trust knew there was a problem with the sale, that would not necessarily mean the Trust acted with malice when it filed the sheriff's certificate. Paidar, 615 N.W.2d at 280 ("The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.") (emphasis added). In slander of title cases, courts have defined malice as "reckless disregard for the truth," Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1258 (8th Cir. 2013), and "groundless disparagement of the plaintiff's title or property," Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 226 N.W. 191, 192 (Minn. 1929). The challenge to the sale of the Champlin property involved a very technical application of law. None of the allegations or evidence before the Court suggests that the Trust recklessly or groundlessly disregarded legal authority when it filed the sheriff's certificate.

**E.  Quiet Title**

Because the Court concludes that the January 11 sale of the Champlin property was invalid, the Gleason's quiet title claim is moot. As the Trust concedes, the effect of granting the Gleasons' motion for partial summary judgment will be the recission of the foreclosure sale and the reinstatement of the mortgage. Def.'s Reply Supp. Dismissal 6.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 13], as to Count 1, is **GRANTED**.

2. Defendant's Motion to Dismiss [Docket No. 4] is **GRANTED** in part, as to Count 2, Slander of Title claim, and **DENIED** in part, as to Count 1.

3. Plaintiffs' Count 3, Quiet Title claim, is **DISMISSED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery

ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 26, 2013